[Cite as *Watkins v. Alwishah*, 2021-Ohio-3589.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
COLUMBIANA COUNTY

JACQUELINE WATKINS,

Plaintiff-Appellee,

v.

AHMED ALWISHAH dba 3 BROTHERS AUTO SALES, LLC,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 20 CO 0018

---

Civil Appeal from the
East Liverpool Municipal Court of Columbiana County, Ohio
Case No. 2020 CV I 00006

**BEFORE:**
Cheryl L. Waite, Carol Ann Robb, David A. D'Apolito, Judges.

---

**JUDGMENT:**
Affirmed in part. Reversed and Remanded in part.

---

*Jacqueline Watkins*, *Pro se*, 523 Harrison Street, Newell, West Virginia 26050, for Plaintiff-Appellee

*Atty. Allison L. Harrison* and *Atty. Todd A. Fichtenberg*, Allison L. Harrison Law, LLC, 100 East Broad Street, Suite 320, Columbus, Ohio 43215, for Defendant-Appellant.

Dated: September 30, 2021

_____

**WAITE, J.**

**{¶1}** Appellant Ahmed Alwishah dba 3 Brothers Auto Sales, LLC, ("3 Brothers") appeals the judgment of the East Liverpool Municipal Court in favor of Appellee, Jacqueline Watkins. Appellant alleges the trial court erred in failing to appoint an interpreter; in admitting hearsay evidence; and in failing to appoint counsel for Appellant. Appellant also contends the judgment is against the manifest weight of the evidence. Based on the record, Appellant's assignments of error as to these issues are without merit and are overruled and the trial court's decision is affirmed. However, as to Appellant's additional argument that the judgment was erroneously entered against him personally instead of against the LLC, the record supports Appellant's claim. As to this issue alone, the matter must be reversed and remanded to the trial court.

Factual and Procedural History

**{¶2}** On March 2, 2019, Appellee, Jacqueline Watkins, purchased a 2007 GMC Buick Envoy from Appellant for $6,000. The vehicle was purchased as-is, with no dealer warranty. Appellee provided a down payment of $2,000. The remaining balance was to be paid in biweekly installments of $150, directly to Appellant. The record does not reveal that Appellee was paying any interest on the remaining balance.

**{¶3}** Appellee requested a receipt for the down payment as well as a copy of the parties' purchase agreement. She was told it would be a few weeks before the paperwork would be available. Approximately two weeks later, Appellee received a call informing her that she needed to make a payment of $160. Appellee went to the dealership and made this payment. She again asked for a copy of her contract, but Appellant failed to

provide one. Appellee made a second payment of $140 on March 28, 2019. She again requested a copy of her contract which was again denied. On April 13, 2019, Appellee once again requested her contract. Instead, she received a copy of a title which listed the purchase price of the vehicle at $4,000. Because the purchase price was $6,000, this caused Appellee to become concerned. Two days later Appellee, a West Virginia resident, took the vehicle to Hoopers Rock Springs Parts and Service for the required state vehicle inspection. According to the inspector, the vehicle failed inspection because the frame was rusted to such a degree that it was unsafe to operate on the road. Immediately after this inspection, Appellee called Appellant and requested a refund of her down payment and the two subsequent payments she made on the vehicle. Appellant refused to refund her money and informed Appellee that if she did not continue to make payments on the vehicle, he would have it repossessed. Appellee placed the vehicle in her garage in storage. Because it failed to pass inspection she was unable to drive it.

{¶4} Appellee contacted the Informal Dispute Resolution Division of the Ohio Attorney General's office regarding the matter. On May 17, 2019, Appellee received a letter from Juan Segura, Consumer Complaint Specialist in the Attorney General's office. Mr. Segura informed Appellee:

> We have been corresponding with Three Brothers Auto Sales regarding your complaint. * * * According to their letter, unfortunately, the business has not agreed to resolve your complaint.

Our Informal Dispute Resolution process is voluntary and involves compromise on both sides. Despite our best efforts, a favorable resolution cannot always be reached through our office. * * *

If you wish to pursue this matter further, Small Claims Court may be an option if the amount involved is under $6,000.

(5/17/19 Ohio Attorney General Letter.)

{¶5}   Along with the letter was a copy of Appellant's response, which included a billing statement showing Appellee owed a payment of $303 and a remaining principal balance of $4,333.50. There was also a copy of a handwritten letter signed by Appellant which read, in part:

Mrs. Watkins has made only two payments one was $140.00 on the 30th of March and one 160 on the 16th of March. We are enclosing the payment document.

3 Brothers Auto Sales uses a program called Frazer, wich [sic] can not be altered [sic] for protection of Buyer and Seller.

3 Brothers also is a member in good standing with O1ADA No. 614-863-5800.

(5/6/19 Alwishah Letter to Ohio Attorney General.) We note that neither Appellee's initial complaint to the Attorney General's office nor Appellant's response refer to the business as an LLC.

Case No. 20 CO 0018

**{¶6}** On February 27, 2020, Appellee filed a small claims complaint with the East Liverpool Municipal Court. A hearing was held on July 24, 2020. Both parties appeared without counsel. On that day, the trial court issued a judgment entry in favor of Appellee and against Appellant in the amount of $3,000 plus interest at 5%.

**{¶7}** On August 14, 2020, Appellant, now represented by counsel, filed a motion for findings of fact and conclusions of law. On August 17, 2020, the trial court issued findings of fact and conclusions of law as follows:

**FINDINGS OF FACTS**

1. Plaintiff, Jacquelin [sic] Watkins purchased a 2007 GMC Envoy motor vehicle from the Defendant on March 2, 2019.

2. Plaintiff stated the total sale price of the vehicle to be $6,000.00. She further stated at the time of purchase she did provide to Defendant the sum of $2,000.00 via cash payment as requested by Defendant.

3. Plaintiff testified although a receipt for the cash was requested the Defendant failed to provide the requested document.

4. Plaintiff averred in addition to Defendant's failure to provide the receipt, the Defendant failed to provide all the paperwork associated with the sale of the vehicle including but not limited to the Retail Installment Contract, the Application for Dealer Assignment and odometer statement.

5. Plaintiff testified despite her repeated request for the proper paperwork Defendant failed to provide the documents. Plaintiff made two (2) payments of the vehicle. The first on March 19, 2019 in the amount of $160.00. The second on March 28, 2019 in the amount of $140.00.

6. Plaintiff stated Defendant failed to provide her the requested paperwork on both occasions she submitted payment and that Defendant simply advised she would be contacted when the paperwork was available.

7. On April 15, 2019 Plaintiff (West Virginia resident) had the vehicle state inspected by Hoopers Rock Spring Parts & Service Inc. located in Chester, West Virginia.

8. The state inspection report indicated the 2007 GMC Envoy to have a "rusted away' frame and the vehicle was rejected as being unsafe for travel upon the roadway. (The Plaintiff offered 3 photographs of the frame as Exhibits as well as a copy of the state inspection report.)

9. Plaintiff stated that immediately after the vehicle inspection she did contact the Defendant to inform him about the findings.

10. Plaintiff testified she requested the Defendant return her original deposit and two (2) payments. Thereafter she would return the vehicle to Defendant. Defendant advised it was her problem and if she failed to make timely payments the vehicle would be repossessed.

11. Defendant stated he did have the 2007 GMC Envoy vehicle inspected by his employees prior to sale of the vehicle to Plaintiff.

12. Defendant testified he was aware of his responsibility as a licensed automobile dealer to use reasonable care to assure the vehicle was safe. He was also aware that all repairs were to be performed to any and all dangerous conditions found during an inspection of a vehicle prior to sale.

13. Defendant denied Plaintiff had deposited $2,000.00 cash at the time of purchase and he stated the total purchase price of the vehicle was $4,000.00.

14. Defendant provided the Court with a copy of the Retail Installment Contract, an "As Is" window sticker and an Application for Dealer Assignment dated March 2, 2019 and signed by the Plaintiff. The documents showed the purchase price of the vehicle to be $4,000.00.

15. Defendant asserted this matter has previously been resolved through the Office of the State Attorney General. However Plaintiff submitted correspondence received from the Office of the Attorney General dated May 17, 2019 wherein she was informed of Defendant's refusal to participate in the Informal Dispute Resolution process. The Office of the Attorney General advised Plaintiff to file a small claims action against the Defendant.

16. Defendant's current office manager stated as a general rule the Retail Installment Contract is reflected of the amount financed and not necessarily the total sale price.

**CONCLUSIONS OF LAW**

The Plaintiff asserts she is entitled to (1) original down payment of $2,000.00; (2) the refund of her two (2) payments totaling $300.00; (3) the cost of the inspection $11.66 and (4) $700.00 for additional expenses incurred due to the loss of the use of the 2007 GMC Envoy vehicle. Plaintiff has requested the sum of $3,000.00 in her complaint.

1. Plaintiff is entitled to the amount of $3,000.00 as set forth in her complaint.

2. Defendant is entitled to the return of the 2007 GMC Envoy motor vehicle upon payment of $3,000.00 to the Plaintiff.

Subsequent to viewing and listening to the testimony of the parties, the Court finds the testimony of the Plaintiff to be more credible.

* * *

Plaintiff presented the state inspection report accompanied by photographic evidence showing the condition of the frame to the 2007 GMC Envoy motor vehicle on April 15, 2019. This being a little more than thirty (30) days after her purchase of the vehicle from the Defendant. The Defendant

Case No. 20 CO 0018

acknowledged his obligation under [*Thrash v. U-Drive-It Co.,* 158 Ohio St. 465, 110 N.E.2d 419 (1953)) and he claimed the vehicle was thoroughly inspected prior to the March 2, 2019 sale. This Court finds the testimony of the Defendant not to be credible. The condition of the frame as indicated in the state inspection as well as the photographs clearly establishes such severe rust damage could not have occurred in the short period of time from sale to inspection.

(8/17/20 J.E.)

**{¶8}** Appellant filed this timely appeal.

<u>ASSIGNMENT OF ERROR NO. 1</u>

The Trial Court abused its discretion when it did not appoint an interpreter for Defendant-Appellant.

**{¶9}** Under his first assignment of error, Appellant, apparently a native Arabic speaker, asserts he is unable to understand the English language and is classified as Limited English Proficient ("LEP"). LEP is defined as having "a limited or basic ability to read, speak, write or understand English." (Appellant's Brief, p. 3 citing Interpreters in the Judicial System, A Handbook for Ohio Judges, https://www.sconet.state.oh.us/publications.) Appellant maintains that his inability to adequately understand the English language left him unable to adequately provide a defense at trial. Hence, the trial court abused its discretion in failing to appoint a translator pursuant to R.C. 2311.14(A)(1).

<u>Case No. 20 CO 0018</u>

{¶10} The decision to appoint a translator lies within the sound discretion of the trial court. *State v. Mota,* 6th Dist. Lucas No. L-04-1354, 2006-Ohio-3800, ¶ 23. An appellate court will not reverse a trial court's determination regarding the appointment of a translator during proceedings absent an abuse of discretion. *Id.* An abuse of discretion connotes more than an error of judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Yashphalt Seal Coating, LLC v. Giura*, 7th Dist. Mahoning No. 18 MA 0107, 2019-Ohio-4231, ¶ 14, citing *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶11} R.C. 2311.14(A)(1) provides:

(A)(1) Whenever because of a hearing, speech, or other impairment a party to or witness in a legal proceeding cannot readily understand or communicate, the court shall appoint a qualified interpreter to assist such person.

{¶12} The trial court hearing was not recorded, nor did Appellant submit a statement of evidence pursuant to App.R. 9. Neither the original judgment entry nor the subsequent findings of fact and conclusions of law refer to any request for the appointment of an interpreter nor contain any indication that Appellant has a language barrier. This raises the question whether the issue was properly preserved for review. See *State v. Gegia,* 157 Ohio App.3d 112, 809 N.E.2d 673, 2004-Ohio-2124, ¶ 26 (holding that issues a party fails to raise to the trial court cannot be raised for the first time on appeal). It was Appellant's duty to either provide a transcript of the hearing or an acceptable substitute pursuant to rule. Absent such a record, we must presume the

regularity of the proceedings. Notwithstanding the question of waiver, however, the record as it stands reflects the trial court's failure to appoint an interpreter for Appellant was not unreasonable, arbitrary or unconscionable.

{¶13} Appellant testified that he was aware he was required to have the vehicle inspected before sale, that an inspection took place, and the vehicle passed that inspection. Appellant also argued that the sale price for the vehicle was $4,000.00 and that it was sold in as-is condition. Appellant had made these same assertions in his response to the Ohio Attorney General office's request for informal resolution. While his handwritten response to the Ohio Attorney General's inquiry does not constitute perfect written English, Appellant's theory as to why he would not return Appellee's funds was very clear. Appellant used the same logic in the trial court. The record before us contains absolutely no indication that Appellant did not understand the proceedings or that he was in any way prejudiced or compromised by a language barrier. Appellant contends that as there is no record to indicate whether the trial court asked him if he needed an interpreter, and the findings of fact do not include a finding as to Appellant's proficiency with the English language, this Court should rule in his favor. However, Appellant is responsible for supplying the record on appeal and has failed in this regard. We also note that the trial court is not required to address a party's proficiency with the English language unless it has been raised by that party. Appellant does not state that he asked for an interpreter and was denied. Appellant has not demonstrated that he was unable to meaningfully communicate with the court such that the issue should have been raised *sua sponte*, and the trial court did not abuse its discretion in not appointing an interpreter based on the limited record before us.

Case No. 20 CO 0018

**{¶14}** Appellant's first assignment of error is without merit and is overruled.

## ASSIGNMENT OF ERROR NO. 2

The Trial Court's finding against Defendant-Appellant was against the manifest weight of evidence

**{¶15}** Appellant asserts the trial court's decision to grant judgment to Appellee was against the manifest weight of the evidence. In support, Appellant advances several issues. He contends that the evidence demonstrates Appellee purchased the vehicle "as-is." He complains that Appellee did not have the vehicle inspected before purchasing it, and that the evidence she produced that the frame was rusted at the time of sale was not supported by expert testimony. Appellant also asserts there was no evidence presented to demonstrate Appellant knew of or concealed any dangerous defects prior to the sale.

**{¶16}** When reviewing civil appeals from bench trials, an appellate court applies a manifest weight standard of review. *Revilo Tyluka, L.L.C. v. Simon Roofing & Sheet Metal Corp.*, 193 Ohio App.3d 535, 2011-Ohio-1922, 952 N.E.2d 1181 (8th Dist.); App.R. 12(C); *Seasons Coal v. Cleveland*, 10 Ohio St.3d 77, 461 N.E.2d 1273 (1984). Judgments supported by some competent, credible evidence going to all the material elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578, syllabus (1978). See, also, *Gerijo, Inc. v. Fairfield*, 70 Ohio St.3d 223, 226, 638 N.E.2d 533 (1994). Reviewing courts must oblige every reasonable presumption in favor of the lower court's judgment and finding of facts. *Id.* In the event the evidence is susceptible to more than one interpretation, it must be construed consistently with the lower court's judgment. *Id.*

Case No. 20 CO 0018

Moreover, the weight to be given the evidence and the credibility of the witnesses are primarily under the purview of the trier of fact. *Kalain v. Smith*, 25 Ohio St.3d 157, 162, 495 N.E.2d 572 (1986).

**{¶17}** Turning to the record in this matter, it is apparent that each party presented testimony to the trial court. Although there was clearly disputed testimony, the trial court determined that Appellee purchased the vehicle on March 2, 2019, for $6,000.00. Appellee testified, and the trial court believed this testimony, that she made a $2,000.00 cash down payment and made two additional payments on the vehicle in the amounts of $160.00 and $140.00. Appellee also testified, and Appellant does not dispute, that Appellant never provided a copy of her installment contract, an odometer statement, or the Application for Dealer Assignment, despite several requests. Appellee testified that as a West Virginia resident, she was required to have a state inspection of the vehicle which was done on April 15, 2019, in Chester, West Virginia. Appellee introduced a copy of that inspection report at trial, which stated that the vehicle's frame was rusted through and it was unsafe to drive on the roadways. Appellee immediately contacted Appellant with the results of the inspection and demanded a return of her down payment and the two installment payments in exchange for a return of the vehicle. Appellant denied her request and warned her that failure to make payments would result in repossession of the vehicle.

**{¶18}** Appellant acknowledged in his testimony that he was required to have the vehicle inspected prior to placing it for sale, and that he was required to perform repairs to correct any and all dangerous conditions found during that inspection. Appellant said the vehicle was inspected by his employees prior to its sale. At trial, Appellant finally

provided a copy of the alleged retail installment contract, as well as the as-is window sticker signed by Appellee.  It was acknowledged that neither had ever been provided to Appellee despite numerous requests.  Appellant also testified that the matter had been resolved through the Ohio Attorney General's office.  Appellant's posture throughout was that Appellee had purchased the vehicle as-is and that it had been inspected by his employees prior to sale.

**{¶19}**  Citing *Thrash v. U-Drive-It Co.,* 158 Ohio St. 465, 110 N.E.2d 419 (1953), the trial court concluded that Appellant did not make a reasonable examination to discover the vehicle defects and did not attempt to correct them or to warn Appellee.  (8/17/20 J.E.)

**{¶20}**  In *Thrash,* the plaintiff lost control of his truck and crashed when a lock ring that was not designed to fit the wheel of his vehicle failed.  *Id.* at 420-421.  The truck was originally owned by the U-Drive-It Company, who sold it "as-is" to the Spot Motor Company.  Spot then advertised and sold the truck to the plaintiff's father.  Plaintiff sued U-Drive-It for negligently equipping the vehicle with the improper lock ring and failing to warn both Spot and the plaintiff's father about the wheel's condition.  *Id.*  Spot was also named as a defendant in the negligence action.  The trial court dismissed U-Drive-It from the case, concluding it was insulated from liability because it sold the vehicle to a dealer, not directly to the consumer.  In ruling against Spot, the Supreme Court held that used car dealers have a duty to exercise reasonable care by making an examination of a vehicle offered for sale in order to discover defects.  If an examination reveals defects, the dealer must either correct the defects or warn the purchaser about those defects.  *Id.,* pp. 473-474.

Case No. 20 CO 0018

**{¶21}** Here, Appellee submitted a copy of the state inspection report conducted by Hoopers Rock Springs Parts & Services dated April 15, 2019. The report reads:

State Inspection

Inspected Brakes, Exhaust, Lights, Tires, Body, Wipers and Horn

Rejection

Frame Rusted away

License Plate Light

(Trial Court Record, p. 7.)

**{¶22}** Appellant contends in his third assignment of error that the report constitutes inadmissible hearsay, which is addressed below. Notwithstanding his hearsay argument, it is clear the vehicle did not pass the West Virginia State Inspection due to the rusted frame and license plate light. Moreover, Appellee presented a number of photographs of the vehicle which showed the condition of the frame. Appellant argues here, as he did below, that he properly conducted an inspection and that the evidence presented did not show that he had knowledge of or concealed evidence of a dangerous defect. Appellant also argues that if the rust was as severe as alleged, Appellee should have been aware of it or would have been made aware had she had the vehicle inspected before its purchase. All of these contentions ignore the duty of reasonable care required of used car dealers.

**{¶23}** In order to establish negligence, it is fundamental that the party seeking recovery must show the existence of a duty on the part of the one sued, failure to perform the duty, and that an injury resulted from this failure. *Linker v. Xpress Fuel Mart, Inc.,* 7th Dist. Mahoning No. 17 MA 172, 2018-Ohio-5404, ¶ 9. The issue of whether a duty exists in a negligence action is a question of law. *Laughlin v. Auto Zone Stores, Inc.,* 7th Dist. Mahoning No. 08 MA 10, 2008-Ohio-4967, ¶ 11. "Where a used car dealer sells a vehicle 'as is' he is under a duty to use ordinary care to warn the purchaser of defects of which he has, or by the exercise of reasonable care, should have, knowledge[.]" *Stamper v. Parr-Ruckman Home Town Motor Sales, Inc.,* 25 Ohio St.2d 1, 265 N.E.2d 785 (1971), paragraph one of the syllabus.

**{¶24}** In the instant matter, Appellee purchased the vehicle and took possession on March 2, 2019. As a West Virginia resident, Appellee was required to have an inspection performed on the vehicle. Appellee had the inspection conducted on April 15, 2019. The state inspection revealed the frame of the vehicle to be rusted through to such an extent that it was unfit to be operated. Appellant has maintained that he knew he was required to inspect vehicles he intended to sell and was also required to either repair any defects prior to selling or to warn the purchaser. Appellant has also maintained that his employee inspected this vehicle before he sold it to Appellee. Despite these concessions, Appellant contends that if the vehicle was rusted to the point of being unsafe, Appellee should have observed it herself or had it inspected prior to purchase rather than waiting until April 15th. Finally, Appellant contends that Appellee presented no evidence proving he knew the vehicle had any dangerous defects.

Case No. 20 CO 0018

**{¶25}** This record shows that evidence was presented the vehicle's frame was so rusted in April of 2019 that it was unsafe to be operated on the roadways. Appellant sold Appellee the vehicle approximately one month before. Appellant's assertion that he had no knowledge of the defect and that the frame could have rusted between the time of sale and the West Virginia inspection defies logic in this instance. As the trial court noted, "[t]he condition of the frame as indicated in the state inspection as well as the photographs clearly establishes such severe rust damage could not have occurred in the short period of time from sale to inspection." (8/17/2020, J.E.) Appellant's presale inspection of the vehicle should have revealed the extensive rusting of the frame triggering Appellant's duty, by law, to either correct the defect or warn Appellee of it prior to purchase. Appellant did neither. As such, Appellee presented competent, credible evidence demonstrating that Appellant was negligent in failing to correct or warn of the dangerous defect. This record reveals that the trial court's judgment for Appellee was not against the manifest weight of the evidence.

**{¶26}** Appellant's second assignment of error is without merit and is overruled.

<u>ASSIGNMENT OF ERROR NO. 3</u>

The Trial Court committed plain error when it considered evidence that is subject to exclusion because it is hearsay.

**{¶27}** In his third assignment of error Appellant contends the trial court committed plain error in admitting the inspection report submitted by Appellee, as it amounted to inadmissible hearsay.

<u>Case No. 20 CO 0018</u>

{¶28} An objection to hearsay must be timely raised or it is waived. Again, as no transcript or substitute record was filed, we must presume the regularity of the trial court proceeding.

{¶29} Regardless, pursuant to Evid.R. 101(C)(8), the Ohio Rules of Evidence are inapplicable in proceedings held in the small claims division of a county or municipal court. The small claims division is considered a "layman's forum" and a party should not be denied justice through a formalistic application of the laws of evidence. *Turner v. Sinha,* 65 Ohio App.3d 30, 33, 582 N.E.2d 1018 (12th Dist.1989). However, some reliable evidence must be presented in order for a party to prove his or her claim. *Id.*

{¶30} In the instant matter, Appellee submitted several documents in support of her claim, including a number of photographs of the vehicle showing the extent of the rust, as well as a copy of the West Virginia state vehicle inspection report that was conducted by Hoopers Rock Springs Parts & Service. Appellee also testified regarding the inspection and her attempts to remedy the situation with Appellant. To require Appellee to subpoena an expert to testify regarding the vehicle inspection would run afoul of the goals of this "layman's forum," particularly when Appellee submitted other reliable evidence in support of her claim. *Turner*, p. 33. As the rules of evidence do not apply in small claims court and Appellant has not submitted any valid basis for objection, the trial court did not err in admitting the vehicle inspection report as evidence.

{¶31} Appellant's third assignment of error is without merit and is overruled.

ASSIGNMENT OF ERROR NO. 4

The Trial Court abused its discretion by entering judgment against Defendant-Appellant who was a member of a Limited Liability Company and was required to be represented by counsel.

**{¶32}** In his fourth assignment of error Appellant's contends the trial court erred when it allowed Appellant to represent 3 Brothers in court and when it entered judgment against Appellant personally, instead of against the alleged LLC.

**{¶33}** In his brief Appellant sets forth the standard of review for a Civ.R. 60(B) motion and for the appointment of counsel in a criminal matter. Neither of these are applicable in this case. Not only is it axiomatic that courts may not appoint counsel for a party in a civil action, we note that it appears Appellant raises both of these issues improperly for the first time on appeal. *Gegia*, ¶ 26.

**{¶34}** Small claims courts are established under R.C. 1925 et seq. These courts have limited civil jurisdiction, primarily for the recovery of money damages in amounts not to exceed $6,000. R.C. 1925.02(A)(1). As earlier discussed, the Ohio Rules of Evidence are inapplicable in small claims courts. Evid.R. 101(C)(8). Further, attorneys may represent a party in small claims but representation is not required. R.C. 1925.01(D). The overall goal of small claims is to provide a quick and fair adjudication of simple claims as an alternative to traditional judicial proceedings. *Cleveland Bar Assn. v. Pearlman,* 106 Ohio St.3d 136, 832 N.E.2d 1193, 2005-Ohio-4107, ¶ 15.

**{¶35}** Appellant cites the general rule that corporate officers or agents of corporations who are not attorneys are not permitted to represent the corporation in court. *Union Sav. Ass'n v. Home Owners Aid, Inc.,* 23 Ohio St.2d 60, 64, 262 N.E.2d 558 (1970). However, the limited record before us does not reflect that Appellant was appearing as a

Case No. 20 CO 0018

corporate officer or agent of a LLC, rather than as an individual defendant.  Regardless, R.C. 1925.17 specifically allows an officer or employee to provide a defense in a small claims action.  Additionally, it is apparent from this record that Appellant was the person she dealt with at the dealership.  Further, Appellant personally answered the Ohio Attorney General's office when they submitted Appellant's complaint and provided the dealership's response to this complaint.

**{¶36}**  In the instant matter, Appellee completed the small claims information sheet listing the Defendant as: "Ahmed Alwishah 3 Brothers Auto Sales 16723 Saint Clair Ave. East Liverpool, OH, 43920." (2/27/20 Small Claim Information Sheet.)  The small claims complaint generated by the clerk of courts from Appellee's information sheet listed Appellant in exactly the same fashion.  (2/27/20 Small Claims Complaint.)  On March 17, 2020, the clerk sent out a notice of hearing setting the matter for trial on May 1, 2020.  For the first time in this case, this entry lists the Defendant as:  "AHMED ALWISHAH DBA 3 BROTHERS AUTO SALES, LLC."  Once again, as we have a limited record, it is unclear why the caption was changed.

**{¶37}**  Appellant argues that 3 Brothers was an active LLC and that he should not have been permitted to represent the LLC at trial.  Again, there is no actual evidence in the record that Appellant was acting on behalf of an LLC.  The trial court did permit Appellant to present a defense and to testify, which is permitted by statute.  Again, it appears that Appellant was the person Appellee dealt with at the dealership.  And again, this matter was being heard in small claims court, where formalistic rules do not generally apply.

Case No. 20 CO 0018

**{¶38}** Pursuant to R.C. 1329.10(C), a plaintiff may commence or maintain an action against a party named only by its fictitious name. *Family Med. Found., Inc. V. Bright,* 96 Ohio St.3d 183, 2002-Ohio-4034, 772 N.E.2d 1177, syllabus. A plaintiff may then enforce the resulting judgment against the user of that fictitious name. *Brown Bark II, L.P. v. Coakley*, 188 Ohio App.3d 179, 2010-Ohio-3023, 934 N.E.2d 991, ¶ 28 (10th Dist.). It is impossible to determine from this record if Appellant alerted the trial court to his claim that this business is actually an LLC. In looking at the court's findings of fact and conclusions of law, the court interchangeably refers both to the business and Appellant Alwishah as "defendant," and does not clearly distinguish the two. Hence, it appears the trial court may have believed he was dealing with an entity using a fictitious name.

**{¶39}** At trial, however, Appellee submitted copies of two invoices that included the heading "3 Brothers Auto Sales, LLC." She also submitted a copy of an Ohio certificate of title for the vehicle. This title lists 3 Brothers Auto Sales, LLC as the previous owner. Thus, even though her original complaint did not initially name the business as an LLC, the evidence on which she relied clearly refers to Appellant 3 Brothers as an LLC. We note that the trial court ordered the "defendant" to pay damages of $3,000 plus interest and that Appellee was to return the vehicle, once she received this award, to "defendant." Since the vehicle had been titled to the LLC, and since Appellant is correct that the trial court undertook no analysis to indicate that the court intended to pierce the corporate veil in order to charge Appellant Alwishah personally with the damage amount, it appears the appropriate entity both responsible for payment of the damages and receipt of the vehicle on its return is the Appellant LLC, although the trial court's award is not

clear on this point. Hence, we must reverse the trial court's award of damages to the extent it appears to be levied against Appellant Alwishah personally and remand this matter to the trial court.

{¶40} Appellant's fourth assignment of error has merit and the matter is reversed only to the extent it appears that damages are erroneously directed to be paid by Appellant Alwishah in his individual capacity and the matter is remanded to the trial court for a new entry in this regard.

{¶41} For the foregoing reasons, Appellant's first three assignments of error are without merit and are overruled. His fourth assignment is sustained. The judgment of the trial court is affirmed in part and reversed in part and remanded to the trial court.

Robb, J., concurs.

D'Apolito, J., concurs.

_____

For the reasons stated in the Opinion rendered herein, Appellant's first, second and third assignments of error are overruled and his fourth assignment is sustained. It is the final judgment and order of this Court that the judgment of the East Liverpool Municipal Court of Columbiana County, Ohio, is affirmed in part and reversed in part. This matter is hereby remanded to the trial court for further proceedings according to law and consistent with this Court's Opinion. Costs to be taxed against the Appellee.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**